UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
LEO KELLY, et al.                                   )
                                                    )
              Plaintiffs,                           )
                                                    )
       v.                                           )    No. 1:07CV1601(RBW)
                                                    )
EVELYN UPCHURCH, Director, Texas                    )
Service Center, U.S. Department of                  )
Homeland Security, et al.                           )
                                                    )
              Defendants.                           )
_____)

**REPLY IN SUPPORT OF MOTION TO DISMISS OR TRANSFER**

**<u>SUMMARY</u>**

Congress has expressly withdrawn federal court jurisdiction over the discretionary

judgments, actions, and decisions United States Citizenship and Immigration Services

("USCIS") makes when reviewing petitions for immigration benefits.   Nonetheless, Plaintiffs

contend that federal courts can intervene in the adjudicative process and compel USCIS to

complete its adjudication of an adjustment of status application by an arbitrary deadline

whenever the background investigations remain pending for more than two years.  Plaintiffs'

jurisdictional arguments rest on the premise that the USCIS Texas Service Center lacks

discretion to require that Plaintiffs clear national security and background investigations prior to

being granted lawful permanent resident status.

Plaintiffs' assertion that the Court has jurisdiction to compel USCIS to complete its

adjudication of their adjustment applications by a date certain conflicts with the plain language

of the Immigration and Nationality Act ("INA") and the limitations upon Administrative

Procedure Act ("APA") and mandamus jurisdiction.   Section 1252 of the INA precludes judicial

review of USCIS's "judgments" relating to applications for adjustment of status, and to numerous other discretionary "decisions" and "actions" involving immigration-related applications and proceedings.  8 U.S.C. § 1252(a)(2)(B).  That provision applies "notwithstanding any other provision of law," thereby trumping any alternative source of jurisdiction.  Id.

Plaintiffs' claims also fail because there is no APA or mandamus jurisdiction to review or compel discretionary agency action.  Congress could have imposed time limitations upon adjustment of status applications, such as the INA provision allowing courts to adjudicate naturalization applications that have been pending for more than 120 days after the applicant was examined.  See 8 U.S.C. § 1447(b).  However, Congress chose not to.  Likewise, there is no statute or regulation requiring the FBI to limit its national security investigations to a fixed period of time.  Nor has Congress limited the FBI's discretion to determine how and when to conduct its national security investigations into applicants' background.   The discretionary nature of the USCIS and FBI decisions at issue in this case therefore provide a second bar to subject matter jurisdiction.

In the alternative, Defendants request that the case be transferred to the United States District Court for the Northern District of Texas.  Plaintiffs seek to compel USCIS to complete the adjudication of their adjustment of status applications.  The Texas Service Center has Plaintiffs' applications, and will adjudicate them.  FBI Director Mueller and USCIS Director Gonzalez will have no direct role in the adjudication of those applications.  Nor will the Directors conduct the national security investigation and pending background checks.  Accordingly, those Defendants' presence in this District does not establish a sufficient

connection to Washington, D.C.  The Northern District of Texas is a more appropriate forum for

this case than this Court, and the interests of justice support transfer.

## STANDARD OF REVIEW

Defendants addressed the standard of review in their motion to dismiss.  See Mem. In

Support of Mot. To Dismiss Or in the Alternative to Transfer, Dkt. Entry 2at 8-9 (hereafter

"MTD").   As stated therein, when reviewing a motion to dismiss pursuant to Rule 12(b)(1), a

court may look beyond the allegations of the complaint, consider affidavits and other extrinsic

information, and ultimately weigh the conflicting evidence.  See Herbert v. Nat'l Academy of

Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992); Rann v. Chao, 154 F. Supp. 2d 61, 64 (D.D.C.

2001), aff'd, 346 F.3d 192 (D.C. Cir. 2003).  A court's consideration of that extrinsic

information does not convert a Rule 12(b)(1) motion to dismiss into a motion for summary

judgment.   See Phoenix Consult., Inc. v. Republic of Angola, 216 F.3d 36, 40 (D.C. Cir. 2000);

Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987).  Plaintiffs' contrary assertions conflict

with the law of this Circuit.  See Mem. In Opposition to Mot. To Dismiss, Dkt. Entry 3, at 4-5

(hereafter "Opp.").

## ARGUMENT

**I.    THE COURT LACKS JURISDICTION OVER PLAINTIFFS' CHALLENGE TO USCIS'S DETERMINATION THAT IT CANNOT COMPLETE THE ADJUDICATION OF THEIR APPLICATIONS UNTIL THE SECURITY INVESTIGATIONS AND BACKGROUND CHECKS ARE COMPLETE.**

### A.  Section 1252(a) of the Immigration And Nationality Act Forbids Review of Plaintiffs' Claims.

As numerous district courts have recognized, Section 1252(a) of the Immigration and

Nationality Act ("INA"), 8 U.S.C. § 1252(a),[1] deprives courts of jurisdiction over challenges to

---

[1]  Plaintiffs' assertion that Defendants base their jurisdictional defense on Section 1252(g) of the

3

the I-485 adjudication process.  See, e.g., Orlov v. Howard, __ F. Supp. 2d ___, 2007 WL

4293490, at *9 (D.D.C. Dec. 10, 2007); Sun v. Gonzales, No. 07-504, Order (D.D.C. Dec. 10,

2007) (attached hereto as Exhibit 1); Luo v. Keisler, __ F. Supp. 2d ___, 2007 WL 3357241

(D.D.C. Nov. 14, 2007); id. at *1 (citing cases from other districts reaching same conclusion);

Grinberg v. Swacina, 478 F. Supp. 2d 1350 (S.D. Fla. 2007); Safadi v. Howard, 466 F. Supp. 2d

696 (E.D.V.A. 2006); MTD at 9-12 (analyzing statutory language and citing cases from other

districts[2]).  Section 1255(a) of the INA provides that an alien's status "*may* be adjusted by the

Attorney General, *in his discretion* and under such regulations as he may prescribe."  8 U.S.C.

§ 1255(a) (emphasis added)).  Section 1252(a) expressly withdraws judicial review of all issues

concerning USCIS's "judgments" regarding the granting of an adjustment application, and all

discretionary USCIS actions or decisions concerning adjustment applications and other

immigration matters.  8 U.S.C. § 1252(a)(2)(B).  Plaintiffs seek judicial review of USCIS's

determination that it cannot complete adjudication of their I-485s until the national security

investigation into their background is complete, and ask the Court to issue an order forcing

Defendants to complete the adjudication immediately.  See Compl. at 7.  It follows that section

1252(a)'s proscription against judicial review of all "judgments" concerning adjustment of

status, and of any discretionary "act" or "decision" forecloses review of Plaintiffs' claims.

Plaintiffs' opposition memorandum discounts and ignores the national security

implications of their contention that courts may direct USCIS to complete its adjudication of an

adjustment of status application before the national security investigations and background

---

INA, and Plaintiffs' protracted discussion of that provision, is puzzling.  See Opp. at 7, 15-19.
Defendants' motion does not cite, let alone rely upon, 8 U.S.C. Section 1252(g).

[2] Plaintiffs contend that the majority of courts have found that they have jurisdiction to review
such claims.  However, in this District, the majority of District Judges that have reviewed similar
mandamus and APA actions have concluded that they lack subject matter jurisdiction.  In other
districts, the courts appear to be split relatively evenly.

checks have been completed.  Although they do not dispute that the final decision to grant or

deny their applications is unreviewable, they contend that there is a presumption that the

adjudication process itself <u>can</u> be reviewed.  Plaintiffs then argue that USCIS lacks discretion to

enforce its background check requirement because Congress gave USCIS broad "discretion"

over adjustment applications instead of specifically listing the pace of the process and the

background check requirements as examples of decisions encompassed within that discretion.

Plaintiffs also rely heavily on <u>Liu v. Novak</u>, arguing that there are no "decisions," "acts," or

"judgments," at issue in this case, because Defendants allegedly have failed to act.  However,

<u>Liu</u> is not binding upon this Court, and represents the minority view in this District.  <u>Compare</u>

<u>Orlov</u>, 2007 WL 4293490 at *9 (dismissing mandamus challenge to pace of adjudicating

adjustment application for lack of jurisdiction); <u>Sun</u>, No. 07-504 (Order attached hereto as

Exhibit 1) (same); <u>Luo</u>, 2007 WL 3357241.  Defendants respectfully urge the Court to follow the

jurisdictional analysis adopted in <u>Orlov</u>, <u>Luo</u>, and precedent from other districts in which courts

have dismissed claims similar to Plaintiffs' for lack of subject matter jurisdiction.

**A.  There is A Presumption Against Judicial Review of Immigration Matters.**

Plaintiffs' assertion that there is a strong presumption in favor of judicial review in the

immigration context, Opp. at 12, conflicts with D.C. Circuit precedent, and ignores the national

security issues that this case implicates.  The D.C. Circuit has recognized that "[w]hen it comes

to matters touching on national security or foreign affairs . . . the presumption of review runs

aground."  <u>Bruno v. Albright</u>, 157 F.3d 1153, 1162 (D.C. Cir. 1999) (dismissing challenge to

denial of visa for lack of jurisdiction).  Although the Court made that statement in connection

with a visa application, the same principles apply here.

This case clearly involves "matters touching on national security."  Bruno, 157 F.3d at 1162.  Plaintiffs' complaint challenges USCIS's right to ensure that each individual who is granted lawful permanent residency status has successfully cleared security investigations and background checks, and poses no threat to national security.   Plaintiffs dismiss the investigations as "valueless" and "dangerous."[3]  Opp. at 26.  But the FBI determined in 2002 that "deeper, more detailed clearance procedures were required to protect the people and the interests of the United States effectively."  Cannon Decl. (Exh. 2 to MTD).   The name check and security check process determines, inter alia, whether the applicant's identifying information (i.e., name, social security number, or date of birth) matches that of an individual whose name has been recorded in the FBI's databases in connection with an FBI investigation.  See id. ¶ 11.  Thus, if an applicant is a suspected criminal and/or terrorist, or a known associate of such a person, the name check process should reveal that information.   It may be necessary to search paper files in order to determine whether that derogatory information exists.  See id. ¶¶ 13-17, 29.  The number and format of the records and files that must be checked in order to determine whether the applicant's identifying information yields a "hit" in the FBI records may lengthen the time necessary to complete the background check.   See id. ¶¶ 18, 27.

Defendants must ensure that the results of the investigatory process are "accurate and thorough,"  id. ¶ 39, and those security interests cannot yield to speed.   See Luo, 2007 WL 3357241, at *2 (stating that "given the national security implications of immigration regulation, the broad discretion afforded the Attorney General permits the agency to adjudicate applications

---

[3]  The "USCIS" Ombudsman whose remarks Plaintiffs have cited is not a part of USCIS. The Ombudsman reports to the Secretary of the Department of Homeland Security.  See 5 U.S.C. § 452.  The Ombudsman's function is to identify problems individuals and employers have with USCIS, and to propose solutions to those problems.  See id. § 452(b).  The Ombudsman does not have the authority to dictate the terms upon which adjustment of status applications will be adjudicated, or to eliminate the background check requirement.  See id.

only after conducting a careful and thorough investigation"). USCIS cannot be certain that the applicant is eligible for lawful permanent residency status and does not pose a threat to national security until it has received and reviewed the results of the FBI's investigation and background checks. See Vaughan Decl. ¶¶ 5, 14 (Exh. 1 to MTD). Judicial "[i]nterference . . ., therefore, could have national security implications." Orlov, 2007 WL 4293490, at *6; id. at * 9 ("judicial intervention into the adjustment of status process would improperly interfere with national security interests"); Luo, 2007 WL 3357241, at *2 ("[T]he Court's insertion into [the I-485 adjudication] process would be inappropriate and could be detrimental to national security.").

Plaintiffs' reliance on I.N.S. v. St. Cyr, 533 U.S. 289, 298 (2001) is misplaced. In that case, the Supreme Court referenced the general presumption that administrative action is reviewable, but centered its analysis on the "longstanding rule requiring a clear statement of congressional intent to repeal habeas jurisdiction." Id.; see also id. at 299-308 (discussing constitutional and historical significance of the writ). Unlike St. Cyr, this case does not involve the writ of habeas corpus. Accordingly, even if the constitutional protections that preserve habeas review may in some cases trump the presumption against judicial review of national-security- related immigration matters, those protections are inapposite in this mandamus action.

### B. Plaintiffs' Arguments Rest on an Incorrect Interpretation of Section 1252(a).

#### 1. Congress Has Imposed No Limits on USCIS's Ability To Enforce A Background Check Requirement.

Plaintiffs place undue emphasis on the phrase "specified. . . to be in the discretion of the Attorney General," 8 U.S.C. § 1252(a)(ii), and contend that Section 1252(a)(ii) is inapplicable because the text of Section 1255 "does not specifically confer . . . the discretion to indefinitely delay the adjudication of an application for adjustment of status." Opp. at 12. However, the

D.C. Circuit has declined to read Section 1252(a)(ii) so narrowly.  See Zhu v. Gonzales, 411 F.3d 292, 294-95 (D.C. Cir. 2005) (rejecting argument that 1252(a)(ii) applies only to decisions which Congress has explicitly stated are matters of "discretion").  Section 1255 is worded broadly, and provides that adjustments of status are available to aliens in the Attorney General's "discretion and under such regulations as he may prescribe."  8 U.S.C. § 1255.  The explicit reference to "discretion" and use of the word "may" confirm Congress's intent to grant plenary authority to the Attorney General over adjustment applications.[4]  See Zhu, 411 F.3d at 295-96 (discussing import of "may" and "discretion" when assessing scope of discretion granted by a statutory provision).  When a statute confers such broad discretion, the relevant question is whether there is language withdrawing and/or expressly limiting that discretion — not whether there is additional language specifically articulating each type of decision encompassed within that grant of discretion.  See Zhu, 411 F.3d at 296 (noting that plaintiffs could point to no language indicating that decision being challenged had been withdrawn from the Attorney General's discretion).

        Thus, under Zhu, the presumption is that DHS and USCIS have discretion over all aspects of the adjustment of status process unless the text of Section 1252(a)(2)(B)(ii) specifically constrains that discretion.  As explained supra, legislative silence would support a ruling that the Court lacks jurisdiction, not that jurisdiction is present.  Nothing in Section 1252(a)(2)(B)(ii) purports to dictate the pace at which USCIS conducts its adjudications.  Nor does the statute limit USCIS's ability to enforce a background check requirement.  Instead, Congress has authorized a  "direct and continuous liaison" with the Directors of the FBI and CIA to obtain and exchange information for use in enforcing the INA and in the interest of national

---

[4] The Attorney General delegated that authority to USCIS, a component of the Department of Homeland Security.

and border security.  See 8 U.S.C. § 1105(a).  In sum, "Congress clearly intended to leave the

pace of processing adjustment applications within the discretion of USCIS."  Sun, Order at 3

(Exh. 1 hereto); see Orlov, 2007 WL 4293490, at *5; Luo, 2007 WL 3357241, at *2.

> ### 2.   USCIS's Enforcement of the Background Check Requirement and the Remainder of the Adjudication Process Constitute Agency "Action."

Plaintiffs next argue that there has been no "action" in this case, and that Section

1252(a)(ii) — which bars judicial review of any discretionary "action" or "decision" — is

therefore inapplicable.  Plaintiffs also suggest that only the final outcome of the adjudicative

process is a discretionary "action," and that courts can review intermediate steps in that process,

such as USCIS's decision to require that Plaintiffs clear national security investigations prior to

being granted permanent resident status.  Both arguments lack merit.

The D.C. Circuit has endorsed reference to the ordinary usage of a word as a starting

point for interpreting statutory language, and has held that courts may presume that Congress

intended the common usage to apply.  Inner City Broad. Corp. v. Sanders, 733 F.2d 154, 158

(D.C. Cir. 1984).  The "plain meaning of the word action . . . [is] 'an act or series of acts.'"

Orlov, 2007 WL 4293490, at *6 (quoting Safadi, 566 F. Supp. 2d at 699 (quoting Black's Law

Dictionary)).  The Administrative Procedure Act is even broader, and includes "failure to act" as

part of the definition of "agency action."  5 U.S.C. § 551(13).  Thus, given the absence of any

language or legislative history to the contrary, Section 1252(a)(ii)'s reference to discretionary

"action" should be read as encompassing the full adjudicative process.  It follows that the

portions of the process in which USCIS is actively awaiting the completion of the background

checks constitute agency "action" to the same extent as other portions of the process.  See

Orlov, 2007 WL 4293490, at *6; Grinberg v. Swacina, 478 F. Supp. 2d 1350, 1352 (S.D. Fla.

2007) (finding initiation of background checks was action).

Plaintiffs' suggestion that only the final ruling on their applications constitutes agency "action" also would render portions of section 1252(a)(ii) superfluous.  See Luo, 2007 WL 3357241, at *2; Orlov, 2007 WL 293490, at * 6; Safadi, 466 F. Supp. 2d at 699.  Plaintiffs do not appear to dispute that the final ruling is a "decision."   If the only "actions" that are insulated from review are the final rulings USCIS makes, there would be no need to include the term "action" in section 1252(a)(ii) in addition to the term "decision."  See Orlov, 2007 WL 4293499, at *6.

Moreover, Plaintiffs' allegation that there has been no action on the case, Opp. at 14, is factually incorrect.  USCIS initiated the background check.  See Vaughan Decl. ¶ 19.  USCIS staff at the Texas Service Center make regular inquiries concerning the status of the security screening.  See id.  The preliminary IBIS checks have been completed.  See id. ¶ 17.  Although Plaintiffs may wish to know additional specific details about the FBI's security investigation and the steps currently being taken as part of that investigation, see Opp. at 14, that is sensitive law enforcement information which traditionally has been protected from disclosure.  The salient point is that this is not a case in which Defendants have intentionally discarded or otherwise declined to take any actions on an application.  Thus, the Court need not decide whether section 1252(a)(ii) would permit judicial review in those circumstances in order to determine whether jurisdiction exists in this case.

### 3.   This Case Also Involves Judgments and Decisions.

Finally, this case involves unreviewable "decisions" and "judgments"  concerning the adjustment process.  USCIS has decided to enforce its security investigation requirement, and has decided that it cannot complete the adjudication until Plaintiffs have cleared the relevant background checks.  As discussed supra, Section 1252(a)(ii) precludes judicial review of "any

action or decision."  Thus, that provision's reference to "decision[s]" also supports Defendants' jurisdictional arguments.

Some of the decisions USCIS has made in this case also constitute a "judgment regarding the granting" of the adjustment application — i.e., USCIS's determination that the applications cannot be granted until USCIS has reviewed the results of the investigations.  Although an Eastern District of Pennsylvania Judge appears to have read Section 1252(a)(i) differently, that ruling is not binding on this Court.  Most of the courts that have reviewed the jurisdictional issues presented in this case have not addressed the meaning of "judgment" under section 1252(a)(i), and instead have focused on Section 1252(a)(ii).  Thus the lack of precedent does not mean that Defendants have miscomprehended the law.  See Opp. at 10-11.  Most judges simply have not been presented with this precise statutory interpretation.

### C.  Even If the INA Did Not Expressly Bar Judicial Review of Plaintiffs' Claims, The Court Would Still Lack Mandamus and APA Jurisdiction.

As Plaintiffs admit, there is no mandamus jurisdiction unless Defendants have a clear duty to act.  See Opp. at 18.  The law of this Circuit also requires that Plaintiffs establish a "clear right to relief."  In re Medicare Reimbursement Litigation, 414 F.3d 7, 10 (D.C. Cir. 2005).  The Mandamus Act does not provide a remedy where, as here, the act that the plaintiff seeks to compel is discretionary.  See Heckler v. Ringer, 466 U.S. 602, 616 (1984) (noting that defendant must owe plaintiff "a clear nondiscretionary duty" and that all other remedies must be exhausted).

Defendants have no "clear duty" to complete adjudication of Plaintiffs' adjustment applications before the background checks have been completed.  Likewise, Plaintiffs have no "clear right" to such relief.  As explained supra, USCIS has discretion over the entire adjudication process, including the pace at which the adjudication is completed.  See Sun, Order

11

at 4; <u>Orlov</u>, 2007 WL 4293490, at *8; <u>Luo</u>, 2007 WL 3357241, at *2 n. 4; <u>see also</u> MTD at 15-16

(citing additional cases from other districts).  That discretion precludes mandamus jurisdiction.

There is no APA jurisdiction for similar reasons.   Section 706(1), which permits review

of complaints seeking to "compel agency action unlawfully withheld or unreasonably delayed,"

5 U.S.C. § 706(1), applies "only where a plaintiff asserts that an agency failed to take a <u>discrete</u>

agency action that it is <u>required to take</u>."   <u>Orlov</u>, 2007 WL 4293490, at * 7 (internal quotation

marks omitted) (emphasis in original).   Moreover, Congress expressly removed agency actions

"committed to agency discretion by law" from the scope of the APA.  5 U.S.C. § 701(a)(2).

This Circuit has interpreted Section 701(a)(2) to mean that a "plenary" grant of discretion

renders agency actions unreviewable under the APA.  <u>Secretary of Labor v. Twentymile Coal</u>

<u>Co.</u>, 456 F.3d 151, 157 (D.C. Cir. 2006).   USCIS has "plenary" discretion to enforce the

background check requirement because Congress has given it broad "discretion" over adjustment

of status applications.  <u>See</u> <u>Orlov</u>, 2007 WL 4293490, at *8.  That discretion precludes Plaintiffs

from asserting an APA claim.[5]  <u>See</u> <u>id.</u>; <u>see also, e.g.</u>, <u>Safadi</u>, 466 F.Supp.2d at 700; <u>Zheng v.</u>

<u>Reno</u>, 166 F. Supp.2d 875, 878-79 (S.D.N.Y. 2001); <u>Karan</u>, 2003 WL 21209769, at *1

("[B]ecause decisions regarding the plaintiff's immigration status are committed to the discretion

of the INS, this Court lacks the authority under . . . the APA to grant the relief the plaintiff

seeks."); <u>see also</u> <u>Rahman v. McElroy</u>, 884 F.Supp. 782, 787-88 (S.D.N.Y. 1995).

## II.    THE COURT LACKS JURISDICTION TO COMPEL THE FBI TO COMPLETE ITS BACKGROUND INVESTIGATIONS WITHIN A FIXED PERIOD OF TIME.

The FBI's discretion to conduct its national security investigations bars APA and

mandamus jurisdiction over Plaintiffs' challenge to the pace of those investigations and the

---

[5] Section 701(a) of the APA, which "withdraws [an APA] cause of action" to the extent another
statute "precludes judicial review," also prevents Plaintiffs from raising an APA challenge.
<u>Block v. Community Nutrition Inst.</u>, 467 U.S. 340, 345 (1984).

background check process.  Given the obvious national security implications, and the traditional privileges governing law enforcement activities, there is a heavy presumption against judicial review.  See generally Bruno, 157 F.3d at 1162.  Plaintiffs have cited no statute or regulation constraining the FBI's discretion to determine how and when to conduct its investigations, and Defendants are aware of none.

The FBI has determined that "its mission on homeland security requires that its name check process be primarily focused on providing accurate and thorough results."  Cannon Decl. ¶ 20.  No statutes or regulations force the FBI to limit its background examinations to a fixed period of time.  See Shalabi v. Gonzales, No. 06-866, 2006 WL 3032413, at * 5 (E.D. Mo. Oct. 23, 2006) (denying plaintiff's request that the court compel that plaintiff's background check be expedited).   Thus, courts have recognized that they lack jurisdiction to dictate the terms of FBI background investigations, under the APA or any other statute.  See, e.g., Omar v. Mueller, 501 F. Supp. 2d 636, 640 (D.N.J. 2007) (finding no APA jurisdiction to review 'unreasonable delay' claim concerning FBI's completion of background check for naturalization applicant);  Shalabi, 2006 WL 3032413, at * 5 (concluding court lacked jurisdiction to compel FBI to complete background checks); Sozanski v. Chertoff, 2006 WL 4516968, at *1 (N.D. Tex. Dec. 11, 2006) (finding no APA or Mandamus Act jurisdiction to compel FBI to complete background check). For those reasons, the claims in which Plaintiffs seek an order compelling the FBI to complete the investigations within a fixed period of time must be dismissed  for lack of jurisdiction.  See Compl. ¶¶ 1, 20-21.

## III.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR UNREASONABLE DELAY.

Even if the Mandamus Act or  the APA could be construed as permitting this Court to review the reasonableness of the pace of the USCIS and FBI actions at issue in this case, Rule

12(b)(6) would require dismissal of any such claim. The D.C. Circuit has identified six factors

courts should consider when reviewing claims that allege unreasonable agency delay:

> (1) the time agencies take to make decisions must be governed by a "rule of
> reason"; (2) where Congress has provided a timetable or other indication of the
> speed with which it expects the agency to proceed in the enabling statute, that
> statutory scheme may supply content for this rule of reason; (3) delays that might
> be reasonable in the sphere of economic regulation are less tolerable when human
> health and welfare are at stake; (4) the court should consider the effect of
> expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests
> prejudiced by delay; and (6) the court need not "find any impropriety lurking
> behind agency lassitude in order to hold that agency action is 'unreasonably
> delayed.'"

In re United Mine Workers of America Inter. Union, 190 F.3d 545, 547 (D.C. Cir. 1999)

(quoting Telecommunications Research & Action Ctr. v. FCC, 750 F.2d 70, 75-77, 79 (D.C. Cir.

1984) ("TRAC"). Where, as here, Congress has declined to establish a specific timetable for

agency action, the Court is "not free to ignore that judgment and rewrite the statute to include a

specific timetable." In re American Fed. of Govt. Employees AFL-CIO, 837 F.2d 503, 506

(D.C. Cir. 1988).

Plaintiffs' claims run afoul of the D.C. Circuit's admonition that courts should not "grant

relief, even when all the other factors considered in TRAC favored it, where a judicial order

putting the petitioner at the head of the queue would simply move all others back one space and

produce no net gain." Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094,

1100 (D.C. Cir. 2003) (citing In re Barr Labs., Inc., 930 F.2d 72, 75 (D.C. Cir. 1991)). As of the

end of Fiscal Year 2006, there were approximately 364,600 pending USCIS name check

requests, of which over 157,800 were related to adjustment-of-status applications. See Cannon

Decl. ¶ 26 (Exh. 2 to MTD ). USCIS has reported that, as of May 2007, there were 329,160

immigration applications awaiting completion of background checks, of which 31,144 had been

pending for over thirty three months.  See Vaughan Decl. ¶ 20 (Exh. 1 to MTD).  Giving

Plaintiffs' background checks priority over those other individuals' checks would simply delay

the completion of those other investigations.   That would not be equitable, and

> would set a dangerous precedent, sending a clear signal that more litigious
> applicants are more likely to be moved to the top of the proverbial pile over other
> applicants that have waited even longer.  Such a situation hardly optimizes
> resources, and serves only the individual at the detriment to the group.

Dmitrenko v. Chertoff, No. 07-82, 2007 WL 1303009, at * 1 (E.D. Va. Apr. 30, 2007); Orlov,

2007 WL 4293490, at *7 (quoting same).


**IV.    THE NORTHERN DISTRICT OF TEXAS IS A MORE APPROPRIATE FORUM
FOR THIS CASE BECAUSE THAT IS WHERE PLAINTIFFS' APPLICATIONS
ARE PENDING.**

The Northern District of Texas is the jurisdiction in which Plaintiffs' applications will be

adjudicated.  Plaintiffs are not residents of Washington, D.C.  The only nexus between this

District and the case is the fact that two of the agency heads named as defendants have offices in

Washington, D.C.  However those officials will have no direct involvement in the adjudication

of Plaintiffs' applications or the completion of the security investigations.  Accordingly, this is a

case in which "[b]y naming high government officials as defendants, a plaintiff [is attempting to]

bring suit here that properly should be pursued elsewhere."  Cameron v. Thornburgh, 983 F.2d

253, 256 (D.C. Cir. 1993).

Plaintiffs do not even address the extensive precedent from this Circuit holding that cases

seeking review of actions being taken by agency field offices should be transferred to the district

in which the field office is located, rather than being heard in Washington, D.C..  See MTD at

22-27 (citing cases).  Nor do they acknowledge the cases in which courts have transferred

mandamus actions similar to Plaintiffs' to the district in which the USCIS office adjudicating the

immigration application resides.   See, e.g., Abusadeh v. Chertoff, 2007 WL 2111036, at *6-*9 (D.D.C. July 23, 2007) (transferring mandamus action seeking adjudication of adjustment of status application to Southern District of Texas because that was where the application was being adjudicated); Fayyaz v. Dep't of Homeland Security, No. 06-2016 (D.D.C. Oct. 25, 2007) (same) (attached hereto as Exhibit 2).   Defendants' alternative motion to transfer is founded upon that well-established precedent and is not, as Plaintiffs contend, a "delay tactic."

If this District heard every case involving an agency whose headquarters are located, or policies are set, in Washington, D.C., the Court's docket would quickly become unmanageable. Accordingly, the D.C. Circuit closely scrutinizes venue arguments based solely on federal agency defendants' presence in the District of Columbia.   See Cameron, 983 F.2d at 256.   Even when such defendants' presence makes venue technically proper in this District, courts frequently invoke their discretionary transfer authority pursuant to 28 U.S.C. § 1404(a) and transfer cases to districts with a closer nexus to the parties' dispute.   See, e.g., Abusadeh, 2007 WL 2111036, at *6-*9; Rosales v. United States, 477 F. Supp. 2d 213, 215-17 (D.D.C. 2007) (transferring case against federal agency to district in which the challenged events took place); Southern Utah Wilderness Alliance v. Norton, 315 F. Supp. 2d 82, 886-89 (D.D.C. 2005) (concluding environmental case should be transferred to Utah where D.C. officials only set general policies and did not make specific decisions being appealed); Joyner v. District of Columbia, 267 F. Supp. 2d 15, 20-21 (D.D.C. 2003) (holding that the case's only connection to Washington, D.C. was the situs of named federal government defendants and transferring to a district with which the case had several connections).

The Northern District of Texas has a more significant interest in this case than this Court. There is a local interest in resolving controversies where the relevant decisions are made.   That

interest applies to "controversies requiring judicial review of an administrative decision" to the same extent that it applies to cases involving real property or environmental issues. Abusadeh, 2007 WL 2111036, at * 8 (quoting Sierra Club, 276 F. Supp. 2d at 70). The administrative decisions at issue in this case have been or will be made in Texas.

It bears noting that Plaintiffs' complaint seeks an order compelling Defendants to complete the adjudication of their adjustment applications. Neither Director Mueller nor any other FBI employee has authority to perform that function. Accordingly, the pace of their investigations is not the core issue in this case. Instead, "the action that Plaintiff[s] seek[] this Court to compel is one that will occur in" Dallas, Texas. Abusadeh, 2007 WL 2111036, at *6; see also id. at *7 (concluding "the fact that the FBI . . . may play a role in the processing of Plaintiff's application . . . does not alter the fact that the ultimate decision on Plaintiff's application for naturalization . . . will be made" at the USCIS field office).

Although the complaint also requests an order compelling the FBI to complete its security investigation and background checks, Plaintiffs have not cited any precedent authorizing judicial involvement in that law enforcement process. In any event, the FBI's involvement in the security investigations does not make this an appropriate forum for Plaintiffs' mandamus action. The complaint and Plaintiffs' opposition memorandum focus on USCIS's alleged duty to complete its adjudication of Plaintiffs' applications. The FBI does not determine whether, when, or how the adjustment application will be adjudicated. Instead, the FBI conducts the background investigation and sends the results to USCIS. See Cannon Decl. ¶ 40. The USCIS office with jurisdiction over the case (here, the Texas Service Center) monitors the FBI's completion of the background investigation, and that office will make the final decision on Plaintiffs' applications. See Vaughan Decl. ¶¶ 18, 19 (Exh. 1 to MTD). Moreover, the record does not support

17

Plaintiffs' assertion that the "name check" will be conducted in this district.   The Cannon declaration simply states that the Central Records System can be accessed by FBI headquarters and field divisions.

## CONCLUSION

For the foregoing reasons and those set forth in Defendants' Motion to Dismiss, Defendants respectfully request that the Court GRANT Defendants' motion to dismiss or, in the alternative, TRANSFER this case to the Northern District of Texas.

Dated:  December 12, 2007                              Respectfully submitted,

                                                  /s/                                                  .
                                          JEFFREY A. TAYLOR, D.C. BAR # 598610
                                          United States Attorney


                                                  /s/                                                  .
                                          RUDOLPH CONTRERAS, D.C. BAR $ 434122
                                          Assistant United States Attorney


                                                /s/ Robin M. Meriweather                        .
                                          ROBIN M. MERIWEATHER, D.C. Bar. # 490114
                                          Assistant United States Attorney
                                          555 Fourth St., N.W.
                                          Washington, D.C.  20530
                                          Phone: (202) 514-7198 Fax: (202) 514-8780
                                          Robin.Meriweather2@usdoj.gov

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JIANPING SUN,

     Plaintiff,

     v.                        Civil Action No.  07-504  (JDB)

ALBERTO GONZALES, et al.,

     Defendants.

## ORDER

     Plaintiff Jianping Sun, a native and citizen of the People's Republic of China, brings this action against the United States Department of Justice, the United States Citizenship and Immigration Services ("USCIS"), the United States Department of Homeland Security ("DHS"), the Federal Bureau of Investigation ("FBI"), and related officials within these departments. Plaintiff asks this Court to compel defendants to adjudicate without further delay his pending Form I-485 application for an adjustment of immigration status to become a lawful permanent resident.

     Plaintiff filed his Application to Register Permanent Residence or Adjust Status (Form I-485) on April 24, 2004, along with a visa petition (Form I-140).  Petition ¶ 9.  After an alien applies for an adjustment of status, USCIS conducts a number of investigations to ensure that the alien is eligible for the benefit sought and is not a risk to national security.  See Decl. of Naboone Puripongs ¶ 2; Fact Sheet at 1.  Specifically, USCIS requests (a) an FBI fingerprint check for information relating to an applicant's criminal history within the United States; (b) a check against the DHS-managed Interagency Border Inspection System that "combines information

-1-

from multiple agencies, databases and system interfaces to compile data relating to national security risks, public safety issues and other law enforcement concerns"; and (c) an FBI name check, which reviews records maintained in "administrative, applicant, criminal, personnel and other files compiled by law enforcement." Fact Sheet at 2. USCIS also maintains the discretion and the authority to conduct other background investigations when necessary. Id.

According to the USCIS Fact Sheet regarding immigration security checks, "some cases legitimately take months or even several years to resolve" due to the complex, highly sensitive information that is involved in the process. Id. at 2-3. Yet, "USCIS will never grant an immigration service or benefit before the required security checks are completed regardless of how long those checks take." Id. at 1.

Plaintiff's fingerprints were taken and submitted on April 14, 2005. Petition ¶ 9. However, two background checks remain outstanding for plaintiff's application: the FBI name check and the national security background investigation. The FBI name check request for plaintiff was received by the FBI on May 18, 2004, and remains pending. See Decl. of Michael A. Cannon ¶ 22. Also, during the processing of plaintiff's application, USCIS requested a national security screening of plaintiff, which remains ongoing. See Decl. of Naboone Puripongs ¶¶ 8-9.

Believing USCIS has unreasonably delayed the adjudication of his adjustment of status application, plaintiff filed with this Court a petition for mandamus on March 14, 2007. Defendants have now moved to dismiss plaintiff's case for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. The issues in this matter are controlled by this Court's decision in Orlov v. Howard, Civil Action No. 07-350, issued on this

date.  The Court refers the parties to the memorandum opinion issued in <u>Orlov</u> for a full discussion of the issues.

Stated succinctly, this Court lacks jurisdiction to review the ongoing pace at which plaintiff's application is being adjudicated.  The Immigration and Nationality Act, 8 U.S.C. § 1255(a), provides that: "The status of an alien . . . <u>may be adjusted</u> by the Attorney General, <u>in his discretion</u> and under such regulations <u>as he may prescribe</u>, to that of an alien lawfully admitted for permanent residence if" certain conditions are met.[1]  In the absence of statutorily prescribed time limitations or statutory factors to guide USCIS in crafting regulations for the adjustment process, Congress clearly intended to leave the pace of processing adjustment applications within the discretion of USCIS.  Because 8 U.S.C. § 1252(a)(2)(B)(ii) divests federal courts of jurisdiction to review a discretionary decision or action of USCIS, and an "action" includes any discretionary act or series of acts within the adjustment of status process (including the pace of completing various security checks), this Court lacks jurisdiction over plaintiff's petition.[2]

_____

[1]Although the text of 8 U.S.C. § 1255 refers to the Attorney General, the discretionary authority to adjudicate adjustment applications and promulgate regulations has been transferred to the Secretary of Homeland Security and the United States Citizenship and Immigration Services.  <u>See</u> 6 U.S.C. §§ 271(b), 557.  The Court will therefore refer to USCIS as the entity with discretionary authority.

[2]Section 1252(a)(2)(B), provides that:

Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review--
(i) any judgment regarding the granting of relief under section . . . 1255 [adjustment of status] . . . , or

The Administrative Procedures Act ("APA") also does not confer jurisdiction upon this Court to review plaintiff's claim because the APA does not apply where "statutes preclude judicial review" or "where agency action is committed to agency discretion by law."  5 U.S.C. § 701(a)(1), (2).  And finally, mandamus may not issue here because plaintiff has failed to demonstrate that defendants have a clear duty to increase the pace at which they are processing his application and because plaintiff has failed to demonstrate that he has a clear right to the relief sought.  See In re Medicare Reimbursement Litig., 414 F.3d 7, 10 (D.C. Cir. 2005) (explaining that "a district court may grant mandamus relief if '(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff'") (quoting Power v. Barnhart, 292 F.3d 781, 784 (D.C. Cir. 2002)).

Accordingly, upon careful consideration of the motion and the parties' memoranda, the applicable law, and the entire record, and for the reasons stated in the memorandum opinion issued on this date in Orlov v. Howard, it is this 10th day of December, 2007, hereby

**ORDERED** that [8] defendants' motion to dismiss is **GRANTED**; and it is further

**ORDERED** that the case is dismissed against all defendants.

**SO ORDERED.**

                                   /s/ John D. Bates
                                     JOHN D. BATES
                              United States District Judge

---

(ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . .

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **MOHAMMAD FAYYAZ and GIZELA FAYYAZ,**<br><br>                    **Plaintiffs,**<br><br>          **v.**<br><br>**DEPARTMENT OF HOMELAND SECURITY, et al.,**<br><br>                    **Defendants.** |

**Civil Action 06-02016 (HHK)**

## ORDER OF TRANSFER

Before the court is the motion of defendants to transfer or, in the alternative, to dismiss [#5].  Upon consideration of the motion, the opposition thereto, and the record of this case, the court concludes that the motion to transfer this action to the Southern District of Texas should be granted. The Southern District of Texas is the more appropriate venue for this action because plaintiffs reside in Houston, Texas, the United States Citizenship and Immigration Services Office with jurisdiction over plaintiffs' adjustment application is there, and plaintiffs' alleged harm occurred there.

Accordingly, it is this 25th day of October, 2007, hereby

**ORDERED** that the Clerk of the Court shall effect the transfer of  this action to the Southern District of Texas.

Henry H. Kennedy, Jr.
United States District Judge